Please call the next case. 215-0293 David Schmidt v. City of Aurora Police Department. Good morning. May it please the court. My name is Margie Comis and I am here on behalf of the appellant David Schmidt. We're here today because a decision of the commission affirmed by the court is against the manifest weight of the evidence. Per the commission decision, it's unrebutted that there was an incident on the training course on June 29th of 2011. Beyond that, the commission appears to cherry pick the records and accepts the theory, as opposed to evaluating them as a whole, and therefore comes to the wrong conclusion. There are four main objective facts here. One is that immobility is just one factor that may cause a deep vein thrombosis. There's a thing that Dr. Bodnar referred to called Virchow's triad. Second, Dr. Carlson and the chiropractor's records do reflect that there was radiating right leg pain throughout the course of his treatment from June 30th to August 15th. And the commission says that there is no record of any leg pain. I'd also argue to you that Dr. Carlson's records are incomplete. Third, there's an MRI dated August 23rd of 2011 that demonstrates there was a strain injury of the gastrocnemius muscle, supporting the injury that occurred on June 29th. And fourth, the lack of reports to right leg pain to the doctors when he presented for other issues doesn't deserve the weight the commission gave it. So back to the first thing. A DVT is the result of a combination of factors. So even if you decide that the alleged immobility is a factor here, it's important to note that it's only a contributing factor. The injury doesn't need to be the sole cause of Schmidt's condition of ill-being. It just has to be a cause. Isn't it true that the commission here found that there was no leg injury whatsoever as a result of the training exercise? The commission said they couldn't find anything to support the leg injury, except for when Mr. Schmidt reported the injury immediately after the training exercise, he did say he was having leg pain. It would seem that in terms of your burden before the commission, you'd have to establish, in order to link up the DVT, you'd first have to establish that a leg injury occurred, and then that the leg injury led to the DVT to be able to make the argument that his current condition was causally related to the training incident. And I didn't see in your brief that you challenged the commission's finding that there was no leg injury as a result of the training incident. It appears that when he reported the injury, he said there was a leg injury, and then it went right on to the fact that he didn't report the leg injury to Dr. Carlson, the chiropractor, because Dr. Carlson's records didn't show there was an injury. But Dr. Carlson's records are woefully inadequate. They don't show that there was an injury that day. They don't show subsequent hospitalization when he did go in for the DVT. They don't show a second hospitalization two weeks later after the DVT. They don't show he saw Dr. Reason when he went to Colorado. Those records also don't show, they're just missing so many things. Even Dr. Bodner says he's going to the chiropractor for treatment of this issue. So I think what's happened is Mr. Schmidt reported the leg injury. He reported it to his chiropractor. His chiropractor calls it right radiating leg pain. So subsequent to that, Mr. Schmidt thinks he's just being treated for this leg pain along with his back injury. So there is a hole in the records beyond radiating right leg pain, but he was being treated by the chiropractor who he had been seeing before, so it was all tied together. He did report the initial injury, though, to the leg. And then this Virchow's triad that we talk about that ties this DVT back in, Dr. Bodner defined it. He said that first you need a hypercoagulable state, which is F factor 5 latent deficiency, which is a genetic disorder Mr. Schmidt suffered from. Second, you need some sort of an injury. In this case, the injury was the one that was sustained to the gastrocnemius muscle that occurred on June 29th and is supported by the MRI of August 23rd. Then third, you need a stasis or slowing of the blood, which is a result of the swelling from the injury. So Mr. Schmidt did present with all three, so there had to have been an injury. That MRI dated August 23rd does show that there was evidence of an injury to the gastrocnemius muscle, which is the calf muscle. So the point here is that a DVT is a combination of factors. It doesn't just result from the alleged immobility or the inferred dehydration that the commission found. Because the commission said, we think he was dehydrated, we infer he was dehydrated because the poor man suffered from diarrhea. There are no medical records to support he was dehydrated. There are no medical, you did not report that? There are no records saying he was dehydrated. When he went to see Dr. Leung on August 4th for treatment of the diarrhea, Dr. Leung specifically made a note that he was treating, he was making sure he wasn't dehydrated by drinking Gatorade. So then we get to the immobility. The commission seems to focus on the records that August 4th and August 5th, Mr. Schmidt went to Dreyer Clinic. The first day he went to see Dr. Leung, who is his PCP, for treatment of the diarrhea. The commission says, wait, you're going for this treatment of diarrhea, how can you not talk about your leg issue? Well, I say to you, he didn't because A, he was treating with his chiropractor, so he thought the leg issue was being taken care of. He didn't know it was as severe as it was going to turn out to be. And secondly, if Mr. Schmidt was so ill that he was immobile, how would he go to Dreyer? And how would he appear the next day to see Dr. Tang, his allergist, for a regular appointment to just check on his rhinitis and dermatitis? If he was immobile and prone, as Dr. Carlson alleged, then he wouldn't be appearing for these regular appointments. And then subsequent to the day he appeared for the DVT, he went to his chiropractor for his adjustment, and he talked about his leg pain, and Mr. Schmidt testifies on that day when he talked about the leg pain, that his chiropractor said, I can't do anything further for you. The next day, Mr. Schmidt appears in the emergency room. So now we've got this leg pain going through. We've proved there's no immobility based on medical records beyond Mr. Schmidt saying, well, wait, I was going to the bathroom frequently, so therefore, how can I be immobile? And he told Dr. Carlson he wasn't immobile. Yet Dr. Carlson said, wait, these emergency room records show there's immobility. He wasn't immobile. He was going to the doctor for regular appointments. If someone is that ill with the flu or the diarrhea or whatever, they wouldn't be getting in a car and going for regular appointments. What about the low back injury? The low back injury, Mr. Schmidt has had a history of low back injuries. He's had a couple cases with the commission for surgeries. It was an aggravation of a preexisting condition. He was treating with Dr. Carlson. He started treating more frequently after this injury on June 29th of 2011. He went to see him more frequently and also went to see Dr. Reason when he was on the trip in Colorado. Well, I'm anticipating, and maybe I shouldn't, your opponent's going to point out a couple of things. He may point out that none of the characteristic records, because I'm looking at this record before us, specifically refer to any aggravation to claim it's a preexisting low back condition caused by a work-related injury. Okay? Then we've got Carlson saying he was getting better since the June 29th, 2011 work accident. And then we've got this note, Reason, on July 15th, 2011. His complaints included stiffness in back pain in his low back and stiffness in his neck, both of which claimant noted were caused by his three prior back surgeries. Well, he had the three prior back surgeries, which was why he was treating with Carlson prior to the date of the injury. On the date of the injury, he reported that the next day he went to see his chiropractor and he takes his trip. Mr. Schmidt testified that he lifts weights and he's in pretty good physical shape, so he's a person who thought these things were going to heal themselves. He'd been treating with the chiropractor hoping that the back was going to heal itself. When he presented to Dr. Reason, he had already driven out to Colorado, so he did have some issues with stiffness, but the stiffness was also a result of aggravating this preexisting condition. But he never mentions to them that he aggravated his back or hurt his back on June 29th, right? That's correct. Wouldn't one expect him to be in there if that was the case? Well, one would expect chiropractor records overall to be a little more efficient and a little more detailed than they are. As we can see from Dr. Carson's records, for example, because Dr. Carson saw him so many more times, there are some glaring holes in it and the records are very cookie cutter. Those records are missing a lot of information. You would think that they would say, you know, patient was in the hospital for a DVT. This is a leg injury. This might be something I want to put in my records. And if you read the records, a lot of it appears to be cut and pasted. So I would say to you that I'm thinking these records are just missing a lot of things that did happen according to the way Mr. Schmidt testified. But what are we to do with that? We have to go objectively. Can we say, well, counsel's probably right. They probably screwed up somewhere. Therefore, the benefit of the doubt goes to the claimant who has the burden of proof. You can see that's a little difficult. I can see that's difficult, which is why I'm presenting to you that he did report the accident. He reported the leg injury immediately. Dr. Carson's records, contrary to what the commission says, do reflect radiating right leg pain. I also, it's important to note that a DVT has more than one cause. Just one thing is not going to make a DVT happen and that he could have had the symptoms of the DVT and they just didn't appear until they manifested when his legs were swollen and got hot. So who's your best physician to support you? I'm pardon? Who's the best physician to support you? I think the hematologist, Dr. Hantel, and I think Dr. Bodnar, his treating orthopedic surgeon. Because the orthopedic surgeon is the one that initially sent him over. Dr. Hantel specializes in the blood diseases such as effector 5-laden. And both of them, they said that they didn't make note of the immobility. And I believe it's because the immobility really, overall in the big scheme of things, of a DVT wasn't the major factor here. The major factor was it was an injury. The injury caused the swelling. Does he have a factor 5-laden deficiency? Absolutely, he does. It's a genetic disorder. 4% of the Caucasian population has it. When Dr. Bodnar was questioned about, or excuse me, Dr. Hantel was questioned about this factor 5, he said that that on its own doesn't affect the clot, but it is a factor that may. They don't test for that up until somebody presents with a DVT. Can I ask you a question? You make an argument in the brief that the commission's finding that there was no causal connection between his work injury and his right leg injury, and his DVT is against the manifest way of the evidence. And that appears to be a medical argument. However, you don't attack the underlying finding that he failed to prove that he sustained any injury to his right leg on June the 29th, 2011. And they list reasons for it. They indicate that he never told his chiropractor his right leg was injured. They found significant that on August the 15th, the day before he presented to the emergency room telling the doctor his right leg felt like it was going to burst. The chiropractic records is silent as to any right leg injury. Most significant, they say, is the absence in the Dyer Clinic records of any right lower leg symptoms. It occurs to me that if you can't establish that their finding that he didn't sustain any injury to his right leg as a result of whatever occurred on June the 29th, then all of the arguments relating to causal connection between current condition of ill being are really irrelevant. I believe the connection is there in where the chiropractor notes radiating right leg pain. As we discussed, there are a lot of things missing in his records. And Mr. Schmidt testified on the 15th, the day before he presented to the ER, the chiropractor notes again say radiating right leg pain. But I go back to, I don't expect... No, the chiropractor records are woefully inadequate here. I think the only proof that we have as far as the record goes is the fact that he talked about it to Sergeant Jim Boatman when he reported the injury. Then the fact that the chiropractic records all do show right radiating leg pain. And then we go into he appeared in the emergency room where he mentioned    that's been recorded  One of the things that we do  is a screen  a patient請s be able to see where there's changes that basically we have a problem with this case for compensability In part, yes, correct I think the observation is correct but I would add to that taking the matter out of chronological order for a moment, if you will Yeah, we don't need any chronological order No, I know you are, your honor but I think in light of counsel's argument perhaps a little chronology might be in order but to answer your question directly not only is the record devoid of objective evidence of an ongoing lower leg problem this is notwithstanding the argument about the radicular pain which has a source in the lumbar spine not it doesn't pain doesn't radiate upward it radiates down be that as it may the medical legal testimony from the doctors Hantel and Bonner and Lakos all rely on the history provided by the petitioner so it's more than just the medical record doesn't support No, that was just a observation There's also the lack of attention to the actual history in the testimony of the medical experts Counsel, let me ask you this because I ask opposing counsel isn't this a nested argument that the claimant is pursuing here in order to establish that the DVT is causally connected to the injury to the work-related accident the claimant would have to first establish the leg injury as a result of the accident and then prove that the leg injury led to the DVT Is that right? That's the theory Okay It seems like what's been addressed is it presupposes that the commission found a leg injury as a result of the work-related training exercise when in fact the commission directly found the opposite that there was no leg injury as a result of the training exercise and that hasn't been addressed here So do you assert that the commission has found a leg injury as a result of the training exercise? I do not know that I agree with that proposition and I would respond that in my opinion it doesn't matter whether or not the commission thought he had an injury or that something happened to his lower leg or not because the ultimate question is whatever that injury may have been if there were one is it causally connected to the DVT because the one doesn't necessarily presuppose  and that's where we find on the one hand the woeful lack in the medical testimony from Bodner, Lakos, and Hantel It seems you're ignoring what should be your primary argument which is claimant does not on appeal argue that the commission's finding of no leg injury was an error Well it was not an error but I'm just arguing But you haven't argued that Well I'm just saying assuming arguendo there were the ultimate decision is whether there's a causal connection I don't think there was an injury there was a reported injury there is no accident report that said he had injured his lower leg What did the commission find? Did they find there was an injury or not? Well I don't agree with Justice Harris I'm not sure exactly what they found on that issue but I know that they found no causal connection Well let me just read it to you so that we're not supposing something The commission said the petitioner failed to prove a causal connection between a leg injury to the right lower extremity on June 29, 2011 and his present condition of ill being as it relates to his right lower extremity and his current ability to work So that first finding was no leg injury whatsoever That being the findings and that having been our position all along I cannot disagree with what you're saying your honor All I'm saying is that even if one were to argue that there wasn't an injury there was no causal connection because that's the argument Well now you're straightening yourself out I may be but again this has been our position all along your honor that's all I can say and let me add something a little out of order again Do you argue the alternative basis before you argue the underlying basis? Does that make sense? Well you can I suppose you can One can never be too careful your honor that's all I say The point is doesn't one first argue their underlying basis and then argue an alternative if that's wrong as opposed to the opposite direction? Well you know this may be a case where the tail wags the dog I haven't considered that proposition deeply but because this has been our position all along I have to be honest with you I didn't entertain it in that fashion and again there's a lot of medical legal testimony here and again I'm not arguing that the man reported an accident so again one can't be too careful but let's look at the chiropractor records yes they may be inadequate they may woefully be inadequate this man's been under this chiropractor's care for a long time the petitioner put these records in they chose to start with the day of the accident June 30th 2011 there are records before that proceeding June 30th 2011 but didn't when he appeared at the chiropractor on the day in question June 30th 2011 the doctor says he's improved since his last visit or improved since he started treatment so much for the lay now again this argument about radiating pain that's about as red as I've ever seen because this court has seen a lot of bad cases he has had two laminectomies two lumbosacral surgeries radiating pain that a chiropractor's going to deal with is low back pain radiating that's what they're talking about that's a long-standing pre-existing condition the leg did not recover from the hospital some seven weeks after the incident on June 30th on a curve stone basis most doctors would say he's probably within the time limit when you could expect something like this to happen and that's basically what Dr. Bodner's testimony was but let's look at what Dr. Bodner was relying on by the way Dr. Lagos relied on this history and so did Dr. Hantel he said petitioner was injured on June 29th and never healed completely then he's in and   the hospital and that's basically what he was doing he stated the history as he understood it to be that after he injured himself pushing the vehicle he went on vacation rested some went back to work with his legs still bothering compensated as best as possible and then about 15 two nights before he saw me he had the acute onset of pain well doctor says elsewhere the history is crucial here well they just left out that period of immobility which by the way that's in the emergency room records at the hospital where he stated to the emergency room doctor that he had been immobile he had diarrhea he was on vacation for two weeks with so called sick self there were two separate histories on August 16th he was immobile for two weeks he was in bed for two weeks because of diarrhea those are from the records so I don't know that we're searching for facts here about what the history of this problem was and notwithstanding what counsel said that mistakes perhaps that's too strong a word  what counsel says quote you have to have dehydration you have to have immobility that's what Dr. Hentel said he's a hematologist and he relied on the history that Bodner and Lakos did and again if there's a hole in the record that's the hole in the petitioner's record  there is a history of immobility he was out for two weeks I've had the flu I've had those same symptoms you lose a few days from work etc. but this was a two week off period he did go to the doctor on the fourth and fifth day he didn't see anything happening he saw Dr. Chang the next day there's a note about no complaints of swelling or pain in the musculoskeletal system generally which would include the lower        which is a typical case seven weeks later more is required and in this case the more wasn't there it was less that was there because the petitioner's theory on causation relied on an unbroken chain of something happening to the leg nothing intervening and then showing up at the hospital on August 16th those aren't the facts so we urge you to thank you counsel counsel you may reply thank you back to justice Hoffman's question I would disagree with counsel when he says radiating right leg pain we all know what that means because we don't  that means we don't know what the chiropractor meant when we put it down what we do know is he was complaining about pain in his right leg I would also like to point out that Dr. Hantel did say you have to have immobility and you do have to have dehydration but right before that he said you have to have an injury then you have to have a foot pursuit and then as soon as he got back from vacation he had a second foot pursuit that he did give in his history to all his treating physicians so they all probably just compounded the injury because Dr. Hantel did say you can have every      need you have an injury but then you don't have this foot at all because you have ajan component of that injury so it           don't have this foot at all because you have an injury but then you don't have this foot at all because